IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

*Respondent*,

v.

GREGORY WHISONANT, a/k/a
"Geez,"

*Petitioner*.

Criminal No. ELH-17-191
Civil No.:  ELH-19-2002

## MEMORANDUM OPINION

Petitioner Gregory Whisonant has filed a motion under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct sentence.  ECF 216.  It is supported by a memorandum in excess of 50 pages (ECF 216-1) (collectively, the "Petition"), and several exhibits, including Petitioner's Affidavit. ECF 216-2.  In particular, Whisonant asserts multiple claims of ineffective assistance of trial and appellate counsel.

The government opposes the Petition.  ECF 235.  It asserts, *id.* at 1:  "Whisonant's claims either fail under the performance prong or cannot satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984)."

No hearing is necessary to resolve the Petition.  For the reasons that follow, I shall deny the Petition.

### I.     Factual and Procedural Background

Whisonant was the leader of a drug trafficking organization ("DTO") in Baltimore that distributed more than one kilogram of heroin.  *See* ECF 149 (Plea Agreement), ¶ 6(a) (Factual Stipulation); Presentence Report  ("PSR", ECF 166), ¶ 6.  The Drug Enforcement Administration conducted a wiretap investigation into the drug shop, which led to Whisonant's arrest in May 2017.

Law enforcement recovered 350 grams of heroin at his residence, along with a loaded firearm, packaging material, and more than $10,000 in cash. *Id.*

On July 11, 2017, a federal grand jury returned a Superseding Indictment (ECF 63), charging Whisonant and three others with various crimes. In particular, Whisonant was charged as follows: conspiracy to distribute one kilogram or more of heroin from January 2017 through March 21, 2017, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count Two); possession of a firearm (*i.e.*, a loaded Glock 17, 9mm handgun) in furtherance of a drug trafficking crime, to wit, the offense charged in Count Two, in violation of 18 U.S.C. § 924(c) (Count Three); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Four). Harry McKnett, a seasoned criminal defense attorney, was appointed to represent Whisonant. *See* ECF 42.

As the government notes, the offenses "carried stiff penalties." ECF 235 at 2. Moreover, based on Whisonant's criminal history, he was eligible for a sentencing enhancement that, at the time, would have increased his mandatory minimum sentence under Count One from ten years to life imprisonment ("851 Enhancement"). In particular, at the time, 21 U.S.C. § 841(b)(1)(A) (2017) provided: "If any person commits a violation . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." *See also* ECF 201 (Rearraignment Tr.) at 17-18 (explaining the government's agreement not to seek the § 851 Enhancement).

Whisonant expressed displeasure with his lawyer. On March 13, 2018, after an attorney inquiry hearing, Ryan Burke, another veteran defense attorney, was appointed to represent him. ECF 137; ECF 140. Soon after, Whisonant entered into a written Plea Agreement with the government. ECF 149.

Pursuant to the Plea Agreement (ECF 149), Petitioner pleaded guilty on April 25, 2018, to Counts One and Three of the Superseding Indictment. ECF 148. Count One carried a ten-year mandatory minimum term of imprisonment, and Count Three carried a mandatory minimum sentence of five years, consecutive. ECF 194, ¶ 3. The government agreed to recommend a "reasonable" sentence after consideration of the final advisory Guidelines range. ECF 149, ¶ 15. Of import here, the government agreed not to seek a § 851 Enhancement. *Id.* ¶ 10. It also agreed to dismiss the remaining counts. *Id.* ¶ 15.

During the Rule 11 proceedings, the Court pointed out to Whisonant that the government's agreement to recommend a reasonable sentence was not "a specific promise of any particular sentence." ECF 201 at 20. The defendant indicated he understood. *Id.* The Court also said, *id.*: "And also, sir, what you think is reasonable and what the government thinks is reasonable could be worlds apart." Again, the defendant said he understood. *Id.*

Under the Plea Agreement, Whisonant agreed as follows: (1) he was subject to a 4-level enhancement under U.S.S.G. § 3B1.1(a) because he led a drug organization that involved five or more participants; (2) at sentencing, the government could introduce evidence of Whisonant's advance knowledge of a murder committed by another member of the drug shop; and (3) he waived his right to appeal his sentence and conviction. *See* ECF 149, ¶¶ 6(b)(i), 8, 16. Whisonant also agreed that he qualified as a Career Offender, and, as to Count One, he therefore had a base offense level of 37 under § 4B1.1(b)(1) of the advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). *Id.* ¶ 6(b)(i). Further, Whisonant agreed that, as to the firearms offense, his Guidelines were governed by U.S.S.G. § 4B1.1. ECF 149, ¶ 6(b)(ii). And, the parties agreed that, under § 4B1.1(c)(3), his advisory sentencing Guidelines range was 360 months to life imprisonment. *Id.*

By statute, Petitioner faced at least a 15-year mandatory minimum sentence, with a maximum possible sentence of life imprisonment. As the government puts it, ECF 235 at 3: "The sum of these agreements allowed Whisonant to avoid a mandatory life sentence—under the scheme in effect at the time of his sentencing—while also allowing Whisonant to argue for a sentence as low as 15 years' imprisonment."

The PSR (ECF 166) determined that Whisonant qualified as a Career Offender, with a base offense level of 37 for Count One. *Id.* ¶ 20. In effect, this rendered moot the four-level enhancement under § 3B1.1(a). After deductions for acceptance of responsibility under § 3E1.1(a), (b). Whisonant's final offense level for Count One was 34. *Id.* ¶ 23.

As a Career Offender, Whisonant had a criminal history category of VI. *See* ECF 166, ¶ 49. The PSR noted, however, that even if Whisonant were not a Career Offender, his criminal history was still a Category VI. *Id.* ¶ 46.

The PSR reflected that Whisonant had numerous prior convictions. *See* ECF 166, ¶¶ 28-45. These included a 1997 conviction in Maryland for possession with intent to distribute CDS. *Id.* ¶ 29. Also, the PSR added two points under U.S.S.G. § 4A1.1(d), because Whisonant committed the underlying federal offenses while on probation in Maryland for a 2013 conviction for possession with intent to distribute CDS. *See id.* ¶¶ 29, 47. Therefore, defendant had a total of 17 criminal history points. *Id.* ¶ 48.[1]

According to the PSR, Whisonant's Guidelines range for both counts called for a period of incarceration ranging from 322 to 387 months. *Id.* ¶ 114. This differed from the Plea Agreement. The government acknowledged the corrected Guidelines in its presentence memorandum. *See* ECF 175 at 4.

---

[1] Several of defendant's prior convictions did not score points.

Sentencing took place on July 19, 2018. *See* ECF 178. The Court determined that Whisonant qualified as a Career Offender. ECF 202 at 10. The Court also reviewed the discrepancy in the Guidelines range, as between the Plea Agreement (360 months to life) and the PSR (322 to 387 months). The Court agreed with the calculations in the PSR. *See* ECF 202 at 7-11.

The government recommended a sentence of 360 months of incarceration. Whisonant advocated for a 180-month sentence, which was the lowest possible sentence he could receive, given the mandatory minimums applicable to Count One and Count Three. ECF 174; ECF 175.

As contemplated by the Plea Agreement, the government also presented evidence of intercepted, recorded telephone calls, including a call that captured in real time the murder of Donya Rigby, a young, street-level drug dealer for Whisonant's DTO. *See* ECF 202 (Sentencing Tr.) at 15-21.

According to the government, the defendant knew of the DTO's plan to kill Rigby, and he went to the scene to witness the murder. However, the defendant disputed any involvement in Rigby's murder. ECF 202 at 21-23. Defense counsel said, *id.* at 23: "Quite frankly, my client couldn't even pick Mr. Rigby out of a photo array . . . ." The recorded phone calls are discussed in more detail, *infra*.

Before imposing sentence, the Court expressly considered the objectives of sentencing, the facts of the case, the defendant's prior record, and the personal circumstances of the defendant. *See* ECF 202 at 34-43. For example, the Court took note of defendant's "very difficult childhood that was plagued by economic disadvantage, drug-addicted parents, [and] an abusive father." ECF 202 at 36. Further, the Court noted the defendant's early drug use. *Id.* As for the murder of Rigby,

the Court concluded that the defendant "knew in advance" and "didn't stop it." *Id.* at 42-43. But, the Court also said "that would be the limit of what [the evidence] shows." *Id.*

The Court sentenced the defendant to a total term of 360 months' imprisonment: 300 months' imprisonment for Count One and 60 months' imprisonment, consecutive, for Count Three. *Id.* at 11, 43. That sentence essentially fell in the middle of the advisory sentencing Guidelines range.

Whisonant filed a notice of appeal the next day. *See* ECF 182. However, he subsequently dismissed his appeal. ECF 208.

Five months after Whisonant's sentencing, on December 21, 2018, the President signed the First Step Act. Among other things, it reduced the sentencing exposure for § 851 enhancements by imposing a mandatory minimum of 25 years' imprisonment, rather than a mandatory life sentence. *See* 18 U.S.C. § 841(b)(1)(A) (2019) ("If any person commits a violation . . . after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years . . . ."). Life imprisonment, while no longer mandatory, remains the statutory maximum sentence. *See id.*

On July 8, 2019, Whisonant filed his Petition. *See* ECF 216. Additional facts are included in the Discussion.

## II.     Legal Standards

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise

subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See, e.g., United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x

332, 334 (4th Cir. 2013) (same). Notwithstanding this standard, I am satisfied that no hearing is necessary to resolve the Petition.

## B.

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). And, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded the efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). The Fourth Circuit recently said, in the context of a habeas case under 28 U.S.C. § 2254:[2] "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 325 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would

---

[2] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974).

prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Moreover, the petitioner must meet his burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583 (emphasis added); *see Bousley*, 523 U.S. at 623.

But, there is no procedural default as to claims concerning ineffective assistance of counsel. Such claims ordinarily are not litigated on direct appeal. Rather, claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also United States v. Ladson*, ___ Fed. App'x ___, 2020 WL 707587, at *2 (4th Cir. Feb. 12, 2020) (per curiam). Such claims are, instead, litigated in a § 2255 action, to allow for development of the record. *Massaro v. United States*, 538 U.S. 500, 504-06 (2003); *Ladson*, 2020 WL 707587, at *2.

## C.

Whisonant claims that his lawyers provided ineffective assistance of counsel. Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v.*

*Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). This is because the Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence

under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

As the Supreme Court has said, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. And, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla*, 559 U.S. at 371. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). But, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689)); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566

U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. Therefore, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

With respect to deficient performance of counsel at sentencing, the Supreme Court has described prejudice "to mean the existence of a reasonable probability that the defendant would have been sentenced differently if the error had not occurred." *United States v. Feldman*, ___ Fed. App'x ___, 2019 WL 6492488, at *2 (4th Cir. Dec. 3, 2019) (citing *Sears v. Upton*, 561 U.S. 945, 956 (2010)). In particular, "the Court must consider whether a reasonable probability exists that the result of the proceeding would have been different absent the complained – of error." *Feldman*, 2019 WL 6492488, at *3 n.2 (citing *Molina- Martinez v. United States*, ___ U.S. ___, 136 S. Ct. 1338, 1345 (2016); *United States v. Rangel*, 781 F.3d 736, 745-46 (4th Cir. 2015)).

"Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal . . . ." *Bell v. Jarvis,* 236 F.3d 149, 164 (4th Cir. 2000) (en banc). "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, [a petitioner] must normally demonstrate" both deficient performance, meaning "that his 'counsel's representation fell below an objective standard of reasonableness' in light of the prevailing professional norms," and prejudice, meaning "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 688); *see also United States v. Allendinger*, 894 F.3d 121, 126 (4th Cir. 2018).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**D.**

A valid plea of guilty must be knowing and voluntary. In order for a plea to be both knowing and voluntary, a defendant must know the direct consequences of his guilty plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The Supreme Court has explained that under Fed. R. Crim. P. 11 "the district court is required, as a precondition to acceptance of a guilty plea, to inform the defendant in person of the specified rights he or she may claim in a full criminal trial and then verify that the plea is voluntary by addressing the defendant." *Gonzalez v. United States,* 553 U.S. 242, 247 (2008). This "requirement is satisfied by a colloquy between the judge and the defendant, reviewing all the rights listed in Rule 11." *Id.*

In evaluating the validity of a guilty plea, "courts look to the totality of the circumstances surrounding [it], granting the defendant's solemn declaration of guilt a presumption of truthfulness." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (citation omitted). Notably, "[a] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 76 (1977)). And, "because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.'" *White*, 366 F.3d at 295-96 (quoting *Blackledge*, 431 U.S. at 74).

Indeed, a court must be able to rely on a defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). Clearly, "a more lenient approach . . . 'would eliminate the chief virtues of the plea system—speed, economy, and finality.'" *White*, 366 F.3d at 296 (citation omitted).

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Fourth Circuit stated that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Put another way, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Id.* (quoting *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975)).

Whisonant was advised of his appellate rights at the guilty plea proceeding (ECF 201 at 21-22; ECF 149, ¶ 16) and at the conclusion of sentencing. ECF 202 at 45. But, "even valid appeal waivers do not bar claims that a factual basis is insufficient to support a guilty plea." *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018). In other words, "a challenge to a plea's factual basis survives an appellate waiver." *Id.* However, "'[a] stipulated recitation of facts alone is sufficient to support a plea.'" *Id.* at 365 (quoting *United states v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008)). And, a defendant is "bound by his sworn statements." *McCoy*, 895 F.3d at 365; *see United States v. Bell*, 359 F. App'x 442, 444 (4th Cir. 2010).

### E.

The United States Sentencing Commission is an agency that "Congress has tasked with promulgating 'guidelines . . . for use of a sentencing court in determining the sentence to be

imposed in a criminal case.'" *United States v. Furlow*, 928 F.3d 311, 314 n.1 (4th Cir. 2019) (quoting 28 U.S.C. § 994(a)(1)). Of relevance here, "the career offender provision is an advisory guideline promulgated by the United States Sentencing Commission.[]" *Id.* at 314.

Unlike the mandatory sentencing provisions applicable to an Armed Career Criminal, 18 U.S.C. 924(e), "the career offender provision creates no statutory penalty." *Furlow*, 928 F.3d at 314; *see* U.S.S.G. § 4B1.1. However, a defendant who qualifies as a career offender "may be subject to an increased guidelines offense level and criminal history category, which would result in an increased Guidelines range." *Furlow*, 928 F.3d at 314 (citing U.S.S.G. § 4B1.1(b)).

To be sure, the sentencing Guidelines are merely advisory, not mandatory. *See*, *e.g.*, *United States v. Booker*, 543 U.S. 220, 260-62 (2005); *Rita v. United States*, 551 U.S. 338, 361-62 (2007). But, it is equally clear that the sentencing Guidelines are the "foundation of federal sentencing decisions." *United States v. Hughes*, ___ U.S. ___, 138 S. Ct. 1765, 1775 (2018). Indeed, the sentencing Guidelines have been described as the "starting point" in the effort of a judge to fashion a reasonable sentence. *Freeman v. United States*, 564 U.S. 522, 529 (2011). Thus, the Supreme Court has described the sentencing Guidelines as "the lodestone of sentencing." *Peugh v. United States*, 569 U.S. 530, 544 (2013); *see Molina-Martinez*, 136 S. Ct. at 1346.

Because of the "central role in sentencing" that attaches to the advisory sentencing Guidelines, an "error related to the guidelines can be particularly serious." *Molina-Martinez*, 136 S. Ct. at 1345; *see Feldman*, 2019 WL 6492488, at *3; *Winbush*, 922 F.3d at 231; *Carthorne*, 878 F.3d at 469. Therefore, a defendant who demonstrates an "erroneous, and higher, Guidelines range" will generally need "no further showing of prejudice . . . ." *Molina-Martinez*, 136 S. Ct. at 1345.

## III. Discussion

### A. The § 924(c) Conviction (Count Three)

Whisonant contends that his second lawyer was ineffective for allowing him to plead guilty to Count Three, the § 924(c) offense. He argues that the offense cannot stand absent a conviction for its predicate offense, and he was not convicted of the predicate offense. ECF 216-1 at 10. This claim is devoid of merit.

The predicate offense was set forth in Count Two of the Superseding Indictment, which charged Whisonant with possession of heroin on March 21, 2017, with the intent to distribute. *See* ECF 63. But, in accordance with the Plea Agreement, the government dismissed Count Two. Nevertheless, Whisonant's § 924(c) conviction in Count Three remains proper because it had a basis in fact.

Under 18 U.S.C. § 924(c), a person is prohibited from using or carrying a firearm "during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A). By its plain language, however, § 924(c) does not require that the person be convicted of or even charged with the predicate offense. Rather, § 924(c) requires only that the predicate offense be one that "may be prosecuted."

The Plea Agreement set out the elements of Counts One and Three. *See* ECF 149, ¶ 2. As to Count Three, the Plea Agreement made clear that it pertained to possession of the Glock firearm in furtherance of the crime charged in Count Two, *i.e.*, possession of heroin with intent to distribute. *See id.* ¶ 2(b).

Whisonant agreed in the Plea Agreement, that, on March 21, 2017, investigators executed a search warrant at his home and recovered 350 grams of heroin, packaging material, and more than $10,000 in cash, as well was a loaded Glock firearm. ECF 149, ¶ 6(a). He also agreed that

he used the Glock firearm to further his drug trafficking crimes, including the crime he committed on March 21, 2017, as charged in Count Two. *Id.* Those admissions provided the Court with a factual basis on which to find Whisonant guilty of the § 924(c) offense in Count Three, notwithstanding the government's willingness to dismiss the predicate offense in Count Two. *See United States v. Frye*, 402 F.3d 1123, 1128-29 (11th Cir. 2005) (explaining that the facts admitted to in a plea agreement showing guilt for the predicate offenses provided a sufficient factual basis to sustain a § 924(c) conviction).

The government's agreement to dismiss Count Two was a negotiated concession that inured to the benefit of Whisonant. The willingness of the government to forego a plea to that Count protected Whisonant from a sentence on Count Two. The government was obviously willing to do so, in exchange for defendant's agreement to admit to the conduct that framed both Count Two and Count Three.

Whisonant cites *United States v. Randall*, 171 F.3d 195, 205 (4th Cir. 1999). But, that case supports the government's claim that § 924(c) requires "proof" of a predicate offense, not a conviction. In other words, a § 924(c) conviction requires only a showing that a reasonable factfinder could have convicted the defendant of the predicate offense. *United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002).

In light of the factual basis for the § 924(c) conviction in Count Three, Whisonant's lawyer was not ineffective in allowing Whisonant to plead guilty to that offense. Petitioner cannot satisfy the *Strickland* performance prong.

## B. Discovery

Whisonant complains that his second lawyer failed to seek certain discovery from the government. In his memorandum (ECF 216-1 at 6), and in his Affidavit (ECF 216-2), Whisonant

claims his attorney failed to obtain *Brady*, *Giglio*, and Jencks materials, which Whisonant

identifies as police reports, warrants, warrant affidavits, and material related to witness interviews.

But, as the government points out, "Whisonant's own evidence undermines that claim, as he

attaches a discovery letter confirming the government gave his first counsel those materials (police

reports, warrants, warrant affidavits, and material related to witness interviews) in May 2017."

*See* ECF 216-6. Whisonant also attached to his Petition portions of a warrant affidavit that the

government produced in May 2017 but did not otherwise make public, reflecting that Whisonant's

counsel obtained those materials. *See* ECF 216-10.

The claim also contradicts Whisonant's statements at his guilty plea hearing. *See* ECF 201

at 5-7; ECF 149 (Plea Agreement) at 9 (stating, under oath, that Petitioner was "completely

satisfied" with the representation of his attorney). The following colloquy is pertinent, ECF 201

at 5-6:

> COURT: Is there anything you wanted your lawyer to do for you that he failed to do?
>
> DEFENDANT: No.
>
> COURT: Do you have any complaints whatsoever about Mr. Burke's representation of you?
>
> DEFENDANT: No.
>
> COURT: Are you, in fact, fully satisfied with the services he has provided to you as your lawyer in this case?
>
> DEFENDANT: Yes.

Apart from Whisonant's self-serving Affidavit, there is no credible evidence that defense

counsel was ineffective with respect to discovery. *See Merzbacher v. Shearin*, 706 F.3d 356, 367

(4th Cir. 2013) (recognizing that after-the-fact, self-serving affidavits are "the type of testimony

subject to heavy skepticism") (internal quotation marks, alterations, and citation omitted).

Whisonant also complains that his lawyer did not challenge the identity of a confidential source. *See* ECF 216-1 at 26-27. "[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (citation omitted). Whisonant makes no such proffer here. As the government puts it, ECF 235 at 10, Petitioner provides "no basis for why those sources are important; what identification issues they would talk about; how an issue with one source would taint the other; what precisely they would say that would undermine the veracity of the warrant, the evidence gathered, or the investigation; or why identification issues in this particular warrant would matter at all in the scheme of things, when intercepted phone calls authorized under a different document established Whisonant's participation and leadership in a drug trafficking organization."

A "defendant must come forward with something more than speculation as to the usefulness" of disclosing the identity of a confidential source. *See United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985). Whisonant has failed to do so. This claim lacks merit.

### C. U.S.S.G. § 3B1.1(a)

Whisonant contends that his counsel was ineffective for failing to object to a four-level enhancement under U.S.S.G. § 3B1.1 for his leadership role in the DTO. He argues that because the Superseding Indictment charged only four defendants, the government cannot establish that the criminal activity involved five or more participants. *See* ECF 216-1 at 12. He maintains that because only four people were charged, he was only subject to a two-level increase under § 3B1.1(c). *Id.*

U.S.S.G. § 3B1.1(a) calls for a four-level increase if the defendant was a "leader of a criminal activity that involved five or more participants." However, "Participants" are not limited

to the defendants listed in an indictment. Rather, they include any "person who is criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, Commentary, Note 1. Moreover, they "need not have been convicted" to qualify. *Id.*; *see also United States v. Fells*, 920 F.2d 1179, 1182 (4th Cir. 1990) (approving a § 3B1.1(a) enhancement where, although "not identified by name," the participants "were properly considered by the district court before finding that a 4-level increase for role in the offense applied").

Donya Rigby, who was murdered by members of the DTO, was a part of the DTO, according to the government. At the very least, his membership establishes at least five participants.

In a letter of December 3, 2018, appellate counsel aptly explained to Whisonant that the Superseding Indictment referred to "knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury to distribute and possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance." ECF 216-12. Counsel also said, *id.*: "This would seem to achieve the five or more necessary parties for the leadership enhancement under the sentencing guidelines."

Moreover, Whisonant agreed to the enhancement in his Plea Agreement. *See* ECF 216-11, ¶ 6(b)(i). And, he confirmed his agreement with the enhancement at his guilty plea hearing. *See* ECF 201 at 13.

In any event, Whisnant cannot establish prejudice because his final offense level was determined based on his Career Offender status, rather than any guidelines enhancement. The offense level for a Career Offender is determined by the table in U.S.S.G. § 4B1.1(b), without regard to any other sentencing enhancements, if the offense level from the table "is greater than

the offense level otherwise applicable." Here, the offense level in the table is greater; the § 3B1.1(a) enhancement was of no consequence in the guidelines calculations.

As a result, this claim fails because it cannot satisfy either *Strickland* prong.

### D. The 1997 Felony Drug Conviction

Whisonant contends that Burke was ineffective because he did not object to the three criminal history points that Whisonant received for a 1997 felony drug conviction, even though the conviction was more than 15 years old. *See* ECF 216-1 at 7; *see also* PSR, ECF 166, ¶ 29.

The sentencing Guidelines provide that prior sentences are counted for the assignment of points only if the sentence exceeded one year and one month and was imposed within fifteen years of the defendant's "commencement of the instant offense . . . ." U.S.S.G. § 4A1.2(e)(1). But, there are some exceptions. If the defendant's parole or probation is revoked, for example, then the applicable time period is determined using "the date of the defendant's last release from confinement." U.S.S.G. § 4A1.2(k)(2)(A).

Whisonant was convicted in 1997 in a Maryland court for possession with intent to distribute CDS. He was sentenced to five years, with all but 18 months suspended, followed by three years of probation. PSR, ECF 166, ¶ 29. Whisonant was released from incarceration on March 31, 1999. *Id.* Thereafter, he was found guilty of violation of probation on January 13, 2000. *Id.* As a result, his probation was revoked, and he was sentenced to three years' incarceration. *Id.* He was released on May 27, 2003. *Id.* Because the defendant was last released from confinement in 2003, the conviction fell within the applicable time period. *Id.* Had Whisonant's lawyer disputed the assignment of points, the dispute would have been unsuccessful.

In any event, Whisonant cannot show prejudice. Even without the 1997 conviction, his record reflects qualifying career offender predicates in ¶¶ 33 and 40 of the PSR. Thus, Whisonant

still would have been a Career Offender, with a Criminal History Category of VI. Alternatively, the defendant had at least 14 other criminal history points, again yielding a Criminal History Category of VI. *See* ECF 166, ¶¶ 46-48.

### E. U.S.S.G. § 4A1.1(d)

Whisonant contends that his attorney was ineffective because he failed to object to a two-point increase in his criminal history score, added because of the commission of the underlying offenses while Petitioner was on probation. *See* ECF 216-1 at 32.

Under U.S.S.G. § 4A1.1(d), two points are added to a defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation." The PSR added two points to Whisonant's criminal history score under § 4A1.1(d) because, during the period of the conspiracy, he was on probation for a 2013 conviction. *See* PSR, ECF 166, ¶¶ 40, 47. In particular, Petitioner was convicted of possession with intent to distribute CDS, and he was sentenced to 20 years, with 17 years suspended, and five years of probation. *Id.* ¶ 40. He was released in July 2015. *Id.* Probation was closed in September 2017. *Id.*

The Superseding Indictment charged a conspiracy from January 2017 to March 2017. Therefore, the two points would apply. Regardless, Whisonant's criminal history category was a VI based on his Career Offender status. Therefore, "the outcome would have been the same even if § 4A1.1(d) did not increase his criminal history score." *Id.*

### F. The Murder of Donya Rigby

Whisonant insists that his lawyer was ineffective for failing to object to the government's use of evidence concerning the murder of Donya Rigby, which was uncharged conduct, to advocate for a higher sentence. *See* ECF 216-1 at 14-15.

This argument lacks merit. It "is nullified by clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence." *United States v. Grubbs*, 585 F.3d 793, 798-99 (4th Cir. 2009); *see also United States v. Watts*, 519 U.S. 148, 157 (1997).[3]

The parties had agreed in the Plea Agreement that the government would be entitled to present evidence at sentencing as to Rigby's murder. The government addressed the murder of Rigby in its sentencing memorandum. *See* ECF 175; ECF 216-13. It claimed that Whisonant approved Rigby's murder, which occurred on March 17, 2017, apparently because Rigby was suspected of stealing $800 worth of "pack money." ECF 175 at 2; *see also id.* at 3. Then, at sentencing, the government played recorded phone calls, intercepted pursuant to an authorized wiretap. Rigby's murder was unexpectedly captured in real time, as it happened. The evidence also included an earlier telephone call in which, according to the government, the defendant was alerted to the planned murder.

As noted, in his Plea Agreement, Whisonant agreed that the government could present evidence of his knowledge of the planned homicide of Rigby by members of the drug trafficking organization. ECF 216-11, ¶ 8. Conversely, Whisonant reserved the right to challenge such evidence, and to oppose any enhancement under § 2D1.1(d). *Id.*

At his guilty plea hearing (ECF 201), Whisonant stated on the record that he understood that agreement. The following colloquy is pertinent, *id.* at 16-17:

> COURT: In Paragraph 8, the parties agree that, with respect to the calculation

---

[3] Whisonant cites *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), to support the contention that the government cannot cite uncharged conduct as a basis for a longer sentence. *See* ECF 216-1 at 14. *Nelson* did not concern criminal sentencing.

of the advisory guideline range, there are no other offense characteristics, guideline factors, potential departures or adjustments that will be raise[d] or that are in dispute, except as follows.

The parties agree that, at the sentencing, the government may present evidence of your potential knowledge of a homicide committed by members of the drug trafficking organization in furtherance of the drug conspiracy. I'm going to stop there for a moment. Is that your agreement?

DEFENDANT: Yes.

COURT: And you, sir, shall be free to challenge the evidence and argue against the inclusion of the evidence as part of any guidelines enhancement, and this would be under 2D1.1(d), or any sentencing factors under 3553(a) of Title 18. Is that correct?

DEFENDANT: Yes.

Whisonant asserts that he was assured by his lawyer that the Court would impose no more than the mandatory minimum sentence of 15 years, because he did not commit the murder of Rigby. ECF 216-21, ¶ 11 at 5. But, this assertion flies in the face of the text of the Plea Agreement and the Rule 11 colloquy. *See* ECF 149, ¶ 18; ECF 201 at 23.

The Plea Agreement, which defendant said he read, made clear that "the sentence to be imposed is within the sole discretion of the Court." ECF 149, ¶ 18. In its Rule 11 colloquy, the Court explained to the defendant that the Court "is not a party to" the Plea Agreement, and that "the matter of sentencing is largely within the discretion of the Court," subject to any mandatory minimums set by Congress. ECF 201 at 23. Indeed, the Court expressly informed Petitioner that it had the power to sentence him up to the maximum allowed by law. ECF 201 at 23. The defendant indicated he understood. *Id.* Further the Court told Petitioner: "No one . . . can make a binding promise or prediction to you in this case as to what the sentence will be." *Id.* at 24.

Whisonant also contends that, after the government referenced the Rigby murder, he thought about withdrawing his guilty plea. In his Petition, Whisonant complains that his lawyer advised him as follows:

> Mr. Burke advised Whisonant that it would not be in his best interest to withdraw his guilty plea because the government would have the option to choose seeking a term of life without parole at sentencing . . . .

ECF 216-1 at 36; *see also* ECF 216-2 (Whisonant Affidavit), at 4-5, ¶ 11.

At the sentencing, the defendant allocuted, and asked the Court to impose a 15-year sentence (*i.e.*, the mandatory minimum). ECF 202 at 30-31. He also said, *id.* at 31: "If I knew the government had a whole other idea to come in here to try to get me sentenced to 360 months . . . I might as well go to trial . . . ." The Court indicated that it could not involve itself in plea discussions, but was willing to send the defendant to a magistrate judge to discuss the matter. *Id.* at 32. In addition, the Court granted a recess for the defendant to confer with his lawyer. *Id.* at 32-33. After the recess, the defendant, through counsel, advised that he wanted to proceed with sentencing. *Id.* at 33.

As the government aptly puts it, "This acknowledgement shows that his second counsel made a reasonable strategy decision, in an effort to save Whisonant from a possible life sentence, that Whisonant is now choosing to ignore. That is not ineffective assistance." ECF 235 at 16.

In sum, Whisonant was facing a significant sentence. He knew the government believed he authorized the cold blooded murder of Donya Rigby. He avoided a § 851 Enhancement by pleading guilty. His buyer's remorse does not amount to ineffective assistance of counsel.

### G. The Downward Variance

Whisonant claims his lawyer was ineffective because he failed to seek a downward variance based on the harsh conditions defendant endured while detained at the Chesapeake Detention Facility ("CDF"). *See* ECF 216-1 at 6, 8-19.

Before sentencing, Whisonant filed a *pro se* motion seeking a downward variance based on the conditions at CDF. *See* ECF 176. He personally repeated his request at the sentencing hearing, asking the Court to "consider the motion that I filed for conditions at the institution, at CDF." ECF 202 at 33.

Defense counsel argued for the lowest sentence possible – the mandatory minimum term of 15 years' imprisonment. *Id.* at 21-26. His attorney pointed to Whisonant's difficult childhood and the nature of his involvement in the offense. *See also* ECF 174 (Def.'s Sentencing Mem.) at 3-8.

The following transpired at sentencing, ECF 202 at 34:

DEFENDANT: . . . And I would just, I hope that you can consider the 15 years and the variance, if not either one. Thank you.

COURT: Well, just so the record's clear, there's no way to do anything below the 15 years because that's a Congressionally mandated minimum. So I'm not sure what you meant by the variance. But if you were speaking about that, I just want to be sure you understand, as your lawyer pointed out, that's the minimum . . . .

This claim is without merit. The Court indicated that it was not permitted to impose a sentence below 15 years. But, the Court knew that 15 years was an option. In the Court's view, a guidelines sentence was warranted, for the reasons stated.

### H. Appellate Counsel

Whisonant complains that his appellate counsel was ineffective for urging him to withdraw his appeal. *See* ECF 216-1 at 39.

Whisonant noted an appeal the day after the Court entered its judgment. *See* ECF 180; ECF 182. On January 17, 2019, the United States Court of Appeals for the Fourth Circuit granted Whisonant's motion to voluntarily dismiss the appeal. *See* ECF 208. Whisonant argues that his appellant counsel, Kenneth McPherson, was ineffective for urging Whisonant to dismiss the appeal rather than investigating a claim Whisonant wanted to pursue under the First Step Act. *Id.* at 44. Specifically, Whisonant indicates that, under the First Step Act, he no longer qualifies for an enhancement under 21 U.S.C. § 851 and, even if he did, he would no longer be subject to the 300-month sentence for Count One. *Id.* at 44, 46.

The argument is flawed because Whisonant was not sentenced under a § 851 Enhancement. Therefore, the statutory changes have no relevance here.

To be sure, counsel "'has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. The Supreme Court recently determined that *Flores-Ortega* applies in cases, such as this one, where the defendant waived his appellate rights in a plea agreement. *Garza*

*v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 746-47 (2019); *see also* ECF 216-11, ¶ 16 (waiver of appeal in Plea Agreement).

Whisonant submitted with his Petition, as an exhibit, a letter he received from his appellate counsel, dated December 3, 2018. ECF 216-12. Appellate counsel noted that he drafted his letter to the defendant prior to a phone conference that he had with the defendant. *Id.* at 1. Petitioner also submitted a letter from appellate counsel dated January 15, 2019, concerning the impact of the First Step Act ("FSA"). ECF 216-9.

The first letter demonstrates that appellate counsel consulted with the defendant about the appeal, outlining the advantages and disadvantages of appealing, as required by *Flores-Ortega*.[4] Notably, the appellate lawyer specifically advised Whisonant that he could file an *Anders* brief if there were only frivolous issues, but that pursuing an appeal could place Whisonant in a worse position. He said, ECF 216-12 at 3:

> I know your sentence is very long, but your current sentence gives you hope of a life after release. Pursuing this appeal could erase that hope. . . .
>
> *        *        *
>
> When a life sentence is a possibility, we must be careful and deliberate.

In the letter of January 15, 2019, counsel indicated that the Guidelines were calculated correctly, and "nothing is changed by the passage of the FSA in your case." ECF 216-9 at 3. In counsel's view, "voluntary dismissal [of the appeal] remains the prudent course of action." *Id.*

---

[4] Whisonant's appellate counsel told him the government could withdraw the plea agreement simply because Whisonant pursued an appeal. ECF 216-12 at 2. This assertion is dubious. But, appellate counsel also advised that, if an appeal were successful, then the government could seek a life sentence upon resentencing. *See id.* In any event, there was no meritorious basis for an appeal, and hence no prejudice.

Among other things, he expressed concern that an appeal would constitute a breach of the Plea Agreement. *Id.* at 2.

The letters demonstrate that appellate counsel endeavored to discuss the appeal with Whisonant, gave him the information necessary to make an informed decision, and sought to learn what Whisonant wanted to do about pursuing the appeal. ECF 216-9 at 3 ("Unfortunately, I do not see any viable appeal issues of any kind. You probably have ideas about appellate issues, and I want to take those ideas into account before I make a final decision."). Whisonant complains, not that he was never consulted or was given bad advice, but that he was properly consulted and regrets that he followed the advice. That is not ineffective within the meaning of *Flores-Ortega* or *Strickland*.

With regard to prejudice, Whisonant would have to show that "there is a reasonable probability that, but for counsel's deficient failure to consult," he would have continued to pursue his appeal. *See Flores-Ortega*, 528 U.S. 470 at 484. Prejudice under *Flores-Ortega* overlaps somewhat with the deficiency analysis in that both inquiries find "highly relevant" whether there were "nonfrivolous grounds for an appeal," although a defendant does not have to prove his "hypothetical appeal might have had merit." *Id.* at 485-86. Whisonant makes a conclusory claim of prejudice, which is insufficient. *See Cooper*, 617 F.3d at 315 (finding no prejudice where the defendant "categorically claimed prejudice" and "provided no fact nor posited any scenario to demonstrate that there is a reasonable probability" (citation and internal quotation marks omitted)).

Whisonant cites examples that arose well after he dismissed his appeal. He cannot use them to support decisions he made at an earlier time, before he would have known of those examples. In any event, Whisonant was specifically told that he could pursue his appeal if he

disagreed with his counsel's advice. *See* ECF 216-12 at 3 (discussing the process for filing an *Anders* brief and allowing Whisonant to file his own substantive brief).

Any appeal premised on the First Step Act's effect on a § 851 Enhancement would have been fruitless because Whisonant was not sentenced under a § 851 Enhancement. Rather, Whisonant was sentenced under the standard penalties for § 846 and § 924(c) offenses. Under those circumstances, there is little if any reasonable probability that Whisonant would have prevailed on appeal. *Compare Cooper*, 617 F.3d at 316 (finding no prejudice when, among other reasons, there were no nonfrivolous grounds for an appeal), and *United States v. Foster*, 68 F.3d 86, 89 (4th Cir. 1995) (finding, pre-*Flores-Ortega*, no prejudice when, like here, the defendant's arguments relied on an inapplicable statute), with *Bostick v. FNU Stevenson*, 589 F.3d 160, 168 (4th Cir. 2009) (finding prejudice when, unlike here, the defendant had nonfrivolous grounds to appeal).

Defendant's claims against his appellate counsel lack merit.

## IV.    Conclusion

For the foregoing reasons, I shall deny the Petition. A Certificate of Appealability shall not issue.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless

a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[5]  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.


Date:  March 3, 2020                                    _____/s/_____
                                                       Ellen L. Hollander
                                                       United States District Judge

---

[5] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.